UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADRIANE PADILLA,                          :

                         Plaintiff,    :
                                           07 Civ. 4866 (DLI) (RER)
     - against -                        :

                                           :

SANTIAGO MANLAPAZ a/k/a SONNY              **PLAINTIFF'S RULE 56.1 STATEMENT**
MANLAPAZ; LILIA REYES a/k/a LILY :         **OF UNDISPUTED MATERIAL FACTS**
REYES; BAGUIO CORPORATION
a/k/a BAGUIO VISAYAS                       :
CORPORATION d/b/a BARRIO
FIESTA RESTAURANT a/k/a BARRIO             :
FIESTA a/k/a FIESTA BARRIO;
VISAYAS CORPORATION d/b/a                  :
BARRIO FIESTA RESTAURANT a/k/a
BARRIO FIESTA a/k/a FIESTA                 :
BARRIO; MELPITO CORPORATION
a/k/a MELPITO CORPORATION d/b/a            :
BARRIO FIESTA RESTAURANT a/k/a
BARRIO FIESTA a/k/a FIESTA                 :
BARRIO,
                                           :
                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff Adriane Padilla ("Plaintiff"), in support of her motion for partial summary judgment seeking relief for (i) New York State minimum wage violations; (ii) New York State overtime violations; (iii) New York State spread of hours pay violations; (iv) illegal wage deductions under New York Labor Law; and (v) failure to pay wages under New York Labor Law; respectfully submits pursuant to Local Civil Rule 56.1 the following statement of material facts as to which Plaintiff contends there is no genuine issue to be tried.

## The Parties

1. Plaintiff Adriane Padilla was employed at Barrio Fiesta for a period of time from approximately October 2003 through in or about May 2006. (Ex. 1 ¶ 3.)

2. Defendant Baguio Corporation is organized and existing under the laws of the State of New York, has a principal place of business at 65-14 Roosevelt Avenue, Woodside, New York 11377. (Ex. 1 ¶ 8.)

3. Defendant Manlapaz is the controlling shareholder of Baguio Corporation. (Ex. 2, Manlapaz Tr. at 34:2-17.)

4. At all time relevant to this action, Defendant Baguio Corporation was the vehicle through which Barrio Fiesta restaurant obtained and maintained a liquor license pursuant to New York State law. (Ex. 2, Manlapaz Tr. at 33:21-25, 34:3-17.)

5. Defendant Visayas Corporation is organized and existing under the laws of the State of New York, and has a principal place of business at 65-14 Roosevelt Avenue, Woodside, New York 11377. (Ex. 1 ¶ 9.)

6. At all times relevant to this action, Defendant Visayas Corporation was doing business as Barrio Fiesta restaurant. (Id.)

7. At all times relevant to this action, Santiago Manlapaz and Lilia Reyes were married to each other. (Ex. 2, Manlapaz Tr. at 7:21-24.)

8. At all times relevant to this action, Defendants were employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), N.Y. Lab. Law §§ 2(6), 190(3),

2

651(6), N.Y. Exec. Law § 292(5), and N.Y.C. Admin. Code § 8-102(5). (Ex. 1 ¶ 11.)

9.  At all times relevant to this action, Plaintiff handled, sold or otherwise worked with goods or materials that had been moved in or produced for interstate commerce. (Ex. 1 ¶ 13.)

10. At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1), N.Y. Lab. Law §§ 2(5), 190(2), and 651(5), and N.Y. Exec. Law § 292(6). (Ex. 1 ¶ 14.)

11. At all times relevant to this action, Plaintiff was a person within the meaning of N.Y. Exec. Law § 292(1) and N.Y.C. Admin. Code § 8-102(1). (Ex. 1 ¶ 15.)

### The Restaurant and Premises Owned by Defendants

12. Barrio Fiesta was, at all times relevant to this action, a Filipino restaurant serving beer and wine, located at 65-14 Roosevelt Avenue, Woodside, New York 11377. (Ex. 2, Manlapaz Tr. at 10:6-12.)

13. Barrio Fiesta was opened by the Defendants in 1995. (Id. at 9:23-24.)

14. Barrio Fiesta was owned by the Defendants from the time it opened until at least May 2006. (Ex. 1 ¶ 6.)

15. At all times relevant to this action, Defendants owned the lot and building at 65-14 Roosevelt Avenue, Woodside, New York 11377. (Ex. 1 ¶ 6; Ex. 2, Manlapaz Tr. at 33:15-18, 44:25-45:8.)

16. Defendants Manlapaz and Reyes continue to own the lot and building located at

3

65-14 Roosevelt Avenue, Woodside, New York 11377.  (Ex. 2, Manlapaz Tr. at 44:5-6.)

17.     Defendants currently jointly own the lot and building located at 3719 60th Street, Woodside, New York 11377, which is Defendant Manlapaz's current residence.  (Ex. 2, Manlapaz Tr. at 4:9-11; 43:2-4.)

### Lease of Premises

18.     On March 1, 2007, Defendants Reyes and Manlapaz leased the basement and main floor of 65-14 Roosevelt Avenue, Woodside, New York 11377, to Mona Liza de Luca for use as a restaurant.  (See Ex. 11.)

19.     Pursuant to the terms of the Commercial Lease Agreement dated March 1, 2007, Ms. de Luca agreed to pay Defendants $5,000 per month to lease the restaurant premises.  (Ex. 11.)

20.     Pursuant to the terms of the Commercial Lease Agreement, Ms. de Luca agreed to pay Defendants $60,000 in cash at the time of signing for use of the restaurant's name, and was to pay an additional $40,000 within five years.  (Ex. 11; Ex. 2, Manlapaz Tr. at 51:14-19.)

### Defendants' Expenses and Revenues

21.     The monthly mortgage payment associated with the lot and building located at 65-14 Roosevelt Avenue, Woodside, New York 11377, is between $3,000 and $3,900.  (Ex. 2, Manlapaz Tr. at 45:9-13; Ex. 4, Reyes Tr. at 39:2 – 40:8.)

22. The mortgage payment associated with Defendant Manlapaz's current residence is in excess of $5,000 per month. (Ex. 2, Manlapaz Tr. at 43:16-17; Ex. 4, Reyes Tr. at 39:2 – 40:8.)

23. All of the expenses incurred by Barrio Fiesta, e.g., cost of food and workers' salaries, are paid by Defendant Visayas Corporation. (Ex. 2, Manlapaz Tr. at 40:20-25.) Expenses incurred by Barrio Fiesta were thus paid from revenues earned by the restaurant in sales. (Id. at 41:15 – 42:6.)

24. These expenses included, but were not limited to, the following:

- Singers: $800 per week (Ex. 2, Manlapaz Tr. at 92:20 – 93:6)
- Food: $400 to $600 per week (id. at 248:23)
- Beverages and wine: $400 to $600 per week (id. at 249:5-10)
- Renovations: $30,000 over the course of three years, or approximately $192 per week (id. at 78:25 – 79:8)
- Garbage: $300 per month, or approximately $70 per week (id. at 80:4-5)[1]

25. Defendants claim that all revenues earned by Barrio Fiesta that were deposited into a bank account were deposited into a single bank account with Chase Bank in the name of Visayas Corporation. (Ex. 2, Manlapaz Tr. at 74:15-17.)

26. Occasionally, certain expenses were paid prior to depositing the restaurant's revenues into its bank account. (Ex. 2 at 75:6 – 76:11.)

27. Defendant Manlapaz received any profits earned by Visayas Corporation, operating as Barrio Fiesta. (Ex. 2, Manlapaz Tr. at 41:6-8.)

---

[1] This list does not include the cable (approximately $100 monthly), telephone ($50 monthly), electricity ($200 to $300 monthly), and gas ($300 to $500 every two months in the winter). (Ex. 4, Reyes Tr. at 58:12-21; 62:4-63:5.)

28. The tax return filed by Visayas Corporation in 2007 reported $31,520 in gross sales. (See Ex. 7.) This figure represented less than two months of Barrio Fiesta's operations. (Ex. 4, Reyes Tr. at 74:9-18.)

### Plaintiff's Hiring by Defendants

29. Plaintiff was hired by Defendants to work as a waitress at Barrio Fiesta. (Ex. 1 ¶ 16.)

30. At the time of her hiring, Plaintiff was trained by defendant Manlapaz in, at a minimum, how to carry plates, spoons, glasses; the proper way to handle food; how to carry and serve beer; and how to serve customers. (Ex. 3, Padilla Tr. at 22:24 – 24:20.)

31. Defendants never informed Plaintiff of the minimum wage and overtime laws. (Complaint ¶ 111.)

32. Defendants were not aware of the precise minimum wage at all relevant times to this action. (Ex. 2, Manlapaz Tr. at 22:9-11.)

33. Defendants never claimed to be taking a tip allowance against their minimum wage obligations contemporaneously with paying Plaintiff below the minimum wage, e.g., Plaintiff was never provided with a payment stub listing the allowances claimed (Ex. 2, Manlapaz Tr. at 115:5-14) and Defendants did not keep the relevant records related to such tip allowance (Ex. 2, Manlapaz Tr. at 57:2-22, 109:22-110:22).

34. Defendants further did not retain their records relating to whether Plaintiff's tips were at least the amount of the tip allowance that could purportedly have been claimed. (Ex. 2,

6

Manlapaz Tr. at 57:2-22, 106:22 – 107:21, 109:22-110:22.)

35. Defendants never educated Plaintiff on the definition of a "tip credit," and never informed Plaintiff that they would be taking a tip credit against her wages. (Ex. 1 ¶ 19.)

### Activities Conducted at the Restaurant

36. Defendants ran Barrio Fiesta and other entertainment activities out of the building and lot located at 65-14 Roosevelt Avenue, Woodside, New York 11377. (Ex. 1 ¶ 21.)

37. Defendants' entertainment activities included occasional hosting of pay-per-view boxing matches, as well as occasional card games. Attendees at these events at least occasionally ordered food and drink. (Ex. 1 ¶¶ 30-31.)

38. The main floor of the building located at 65-14 Roosevelt Avenue, Woodside, New York 11377, was occupied by Barrio Fiesta, which served food and alcohol. (Ex. 1 ¶ 23.)

39. During all periods of time relevant to this action, Barrio Fiesta was open every day for dinner and drinks from approximately 4:00 PM. It was open until approximately midnight from Sunday through Thursday, and it did not close until approximately 4:00 AM on Fridays and Saturdays. (Ex. 1 ¶ 24.)

40. Since at least 2005, Barrio Fiesta was open on Saturday and Sundays from 11:00 AM until 4:00 PM for a buffet lunch. (Id.)

41. The basement of the building located at 65-14 Roosevelt Avenue, Woodside, New York 11377 was at times rented for private parties. (Ex. 1 ¶ 25.)

42. Defendants offered several private party menu options priced at $12, $14, or $16

7

per person, and they required payment for a minimum of 40 people. (Ex. 1 ¶ 26.)

43. Guests at private parties were permitted to either buy alcoholic beverages from Barrio Fiesta restaurant or pay a corking fee to bring their own beer or wine. (Ex. 1 ¶ 27.)

44. The basement of the building located at 65-14 Roosevelt Avenue, Woodside, New York 11377 was on certain Sundays rented for the purpose of hosting church functions. (Ex. 1 ¶ 28.)

45. Defendants charged the church $150 for each occasion in which the church used the basement. (Ex. 1 ¶ 28.)

46. Church members attending the private events held in the basement of Barrio Fiesta were permitted to order food and/or beverages, and occasionally did so. (Ex. 2, Manlapaz Tr. at 99:8-12.)

47. The second floor of the building located at 65-14 Roosevelt Avenue, Woodside, New York 11377, contained two apartments. (Ex. 2, Manlapaz Tr. at 46:3-5.)

48. From the period of 1999 through at least 2006, Defendants rented one of the apartments to Morano Mejaras. (Ex. 2, Manlapaz Tr. at 46:22 – 47:5.)

49. According to the informal rental agreement between Defendants and Mr. Mejaras, Mr. Mejaras paid Defendants from $500 to $750 per month to rent the apartment. (Ex. 2, Manlapaz Tr. at 47:6-15.) Mr. Mejaras currently pays Defendants approximately $900 per month. (Ex. 4, Reyes Tr. at 100:10-11.)

50. Mr. Mejaras occasionally invited guests to his apartment for events such as card

games or boxing matches. (Ex. 13 ¶¶ 14-15.)

51. During events held in the apartment rented by Mr. Mejaras, guests from time to time ordered food and/or beverages. (Ex. 1 ¶ 30.)

### Hours Worked and Compensation Paid to Employees

52. At all times during Plaintiff's employment, Defendants employed at least two additional female waitresses. (Ex. 1 ¶ 22.)

53. Defendants had one waitress working on each weekday night, and three waitresses working on Friday and Saturday evenings. (Ex. 2, Manlapaz Tr. at 128:4-18.) Defendants initially wanted to have four waitresses on weekend nights to handle the customers. (Id. 128:13-18.)

54. At all times during Plaintiff's employment, all waitresses employed by the Defendants were paid three dollars for every hour worked, other than the periodic shift pay for buffets and private parties, where waitresses were paid $30 an hour. (Ex. 2, Manlapaz Tr. at 13:5-7; Ex. 5 ¶4.)

55. At all times during Plaintiff's employment, Defendants employed a chef, Camilo Sanchez. (Ex. 2, Manlapaz Tr. at 14:14-16.) Mr. Sanchez did not serve customers in the normal course of his duties. (See id. at 14:14-20.)

56. At all times during Plaintiff's employment, Camilo Sanchez was compensated at a rate of $450 per week. (Ex. 2, Manlapaz Tr. at 14:17-20.)

57. At all times during Plaintiff's employment, Defendants employed a "helper,"

Ruben Sello. (Ex. 2, Manlapaz Tr. at 14:6-9.) Mr. Sello did not serve customers in the normal course of his duties. (See id. at 14:8-13.)

58. At all times during plaintiff's employment, Ruben Sello was compensated at a rate of $350 per week. (Ex. 2, Manlapaz Tr. at 14:10-13.)

### Plaintiff's Duties at Barrio Fiesta

59. In her capacity as a waitress, Plaintiff interacted with customers and performed standard waitressing duties. (Ex. 1 ¶ 33.)

60. In addition to taking orders and serving food, Plaintiff and the other waitresses entered information about the restaurant's sales and expenses, and the waitresses' tips, into certain books allocated for these purposes. (Ex. 1 ¶ 37.)

61. In addition to taking orders and serving food, Plaintiff and the other waitresses occasionally cleaned up after their tables. (Ex. 1 ¶ 35; Ex. 13 ¶ 18.)

62. In addition to taking orders and serving food, Plaintiff and the other waitresses occasionally purchased supplies for the restaurant from nearby stores. (Ex. 1 ¶ 36.)

63. Plaintiff at least occasionally set up the weekend buffet and purchased individual burners for the buffet trays. (Ex. 1 ¶ 36; Ex. 13 ¶ 19.)

64. Plaintiff sometimes mopped the floors at the end of her shifts and cleaned the bathroom. (Ex. 1 ¶ 38.)

65. Plaintiff at least occasionally cleaned glasses. (Ex. 1 ¶ 43.)

66. Plaintiff did not receive additional compensation for performing any actions beyond taking orders and serving customers. (Ex. 13 ¶ 26.)

### Gratuities

67. Plaintiff was routinely paid a gratuity for her services as a waitress. (Ex. 1 ¶ 47.)

68. Additionally, during private parties, Defendants added a 15% "gratuity" to the bill, which they informed guests was a "gratuity" for the waitresses. (Ex. 2, Manlapaz Tr. at 99:10 – 100:16, 104:3-18; Ex. 4, Reyes Tr. at 108:5-9, 137:2-12.) Defendants did not explain to customers that any portion of the 15% gratuity which had been automatically added to bills would be given to anyone other than the waitresses.

69. Defendant Manlapaz instructed the waitresses to share their gratuities with Ruben Sello and Camilo Sanchez, Barrio Fiesta's salaried employees. (Ex. 2, Manlapaz Tr. at 102:13-103:5; Ex. 3, Padilla Tr. at 36:15-37:2, 38:25-39:19, 40:15-41:2.).

### Plaintiff's Hours and Compensation

70. Defendants are not in possession of the records summarizing Plaintiff's and the other waitresses' hours worked at the restaurant for the period from October 2003 until May 2006. (Ex. 2, Manlapaz Tr. at 56:21 – 57:12, 106:17 – 107:20.))

71. Defendant Manlapaz cannot recall the precise schedules of each of the waitresses employed by the restaurant, including Plaintiff. (Ex. 2, Manlapaz Tr. at 107:9-21.)

72. From 2003 to 2004, plaintiff worked certain weekday evenings from approximately 4:00 PM until 11:00 PM, 12:00 AM or 1:00 AM. (Ex. 13 ¶ 33.)

11

73. From 2003 to 2004, plaintiff worked on Fridays and Saturdays from 4:00 PM until at least 2:00 AM, 3:00 AM, or 5:00 AM. (Ex. 13 ¶ 33; Ex. 2, Manlapaz Tr. at 175: 21-23.)

74. In or about January 2004, Plaintiff added the Saturday and Sunday buffet shifts to her schedule, which were five hours each. (Ex. 1 ¶¶ 24; 57.)

75. After January 2004, plaintiff from time to time worked four consecutive shifts on the weekends. (Ex. 13 ¶ 34.)

76. Beginning in 2005, Plaintiff reduced her hours to one weekday shift, as well as weekend evening shifts and buffet shifts. (Ex. 5 ¶ 11.) Plaintiff later took time off during that year, then returned to work for Friday evening, Saturday buffet, Saturday evening, and Sunday buffet shifts. (Id.)

77. In 2006, Plaintiff worked only Friday and Saturday night shifts, as well as some Sunday evening shifts. (Id.; see Ex. 14.)

78. Plaintiff did not receive overtime compensation during the period of her employment. (Ex. 4, Reyes Tr. at 149:6-13.)

79. Plaintiff did not receive an additional hour's pay, at the minimum wage, for each day that she worked a spread of hours in excess of ten hours. (Ex. 4, Reyes Tr. at 153:10-13.)

80. The compensation paid to plaintiff and the other waitresses was recorded in a book specially allocated for recording the waitresses' compensation and schedules. (Ex. 2, Manlapaz Tr. at 106:17 – 107:14.)

## **Defendants' Withholding of Plaintiff's Wages**

81. Plaintiff was issued a summons for serving alcohol to minors by two police officers on or about February 9, 2005, which case was dismissed by the Queens Criminal Court. (Ex. 2, Manlapaz Tr. at 183:15 – 184:4.)

82. During Plaintiff's employment, Defendants incurred several fines and liabilities for violating health and sanitation codes as well as the New York State Alcoholic Beverage Control Law. (Ex. 1 ¶ 71; Ex. 2, Manlapaz Tr. at 182:3-20.)

83. In the fall of 2005, Defendant Manlapaz began withholding salary from Plaintiff and the other waitresses. (Ex. 1 ¶ 72; Ex. 13 ¶ 44.)

84. Plaintiff was not paid any salary from on or about September 2005 until May 2006. (Ex. 13 ¶ 44.)

85. During that time, Plaintiff and the other waitresses only received tips from the centralized pool and $30 for each buffet shift worked. (Ex. 1 ¶ 75; Ex. 13 ¶ 47.)

86. Plaintiff and the other waitresses kept track of the amount of compensation that was owed to them in the book specifically allocated for recording their work schedules. (See Ex. 14.)

87. From September 2005 until May 2006, Plaintiff had $3,479.10 of wages withheld, which is a sum greater than $1500. (See Ex. 5 ¶ 14; Ex. 14.)

88. During the period that he was withholding wages, Defendant Manlapaz promised the waitresses that he would begin paying them wages again at some point in the future. (Ex. 1 ¶

13

73; Ex. 13 ¶ 45.)

89. During the period of time when Plaintiff was not being compensated hourly for her waitressing duties, she continued to work at Barrio Fiesta. (Ex. 1 ¶ 74; Ex. 13 ¶ 46.)

90. Defendant Manlapaz told Plaintiff that his lawyer had said that he should fire her. (Ex. 1 ¶ 77; Ex. 13 ¶ 48.)

91. On or about May 13, 2006, Plaintiff asked Defendant Manlapaz when he would begin paying her wages again. (Ex. 1 ¶ 78; Ex. 13 ¶ 49.)

92. During that conversation, Defendant Manlapaz responded that he would begin paying Plaintiff her salary again when her withheld salary totaled $1500. (Ex. 13 ¶ 49.)

93. During the conversation between Plaintiff and Defendant Manlapaz on or about May 13, 2006, Defendant Manlapaz told Plaintiff that "the door is open." (Ex. 1 ¶ 81; Ex. 13 ¶ 51.)

94. Plaintiff left Barrio Fiesta after this conversation with Mr. Manlapaz, and did not return for work after that date.

95. Defendants have not compensated Plaintiff for the amount of money that was withheld from her paychecks from September 2005 through May 2006. (Ex. 1 ¶ 84; Ex. 13 ¶ 53.)

### **Defendants' Supervision over Barrio Fiesta**

96. Defendant Manlapaz managed Barrio Fiesta. (Ex. 2., Manlapaz Tr. at 11:18-21.)

97. Defendant Manlapaz oversaw, supervised, and managed the hiring, firing, and compensation decisions made at Barrio Fiesta. (Id. at 11:22 – 12:2.)

98. Defendant Manlapaz oversaw, supervised, and managed the work schedules of the waitresses and other employees of Barrio Fiesta. (Id. at 12:19-20.)

99. Defendant Manlapaz controlled the conditions of employment, i.e., the job duties, of employees of Barrio Fiesta. (Id. at 12:21-24.)

100. Defendant Manlapaz trained Plaintiff, to the extent Plaintiff was trained, in duties and obligations attendant to her employment. (Id. at 124:22 – 127:15.)

101. Defendant Reyes oversaw payment of bills and other financial aspects of Barrio Fiesta. (Id. at 12:3-7.)

102. The work schedules of the waitresses at Barrio Fiesta were recorded in a book allocated for that purpose, which was reviewed by Defendant Reyes from time to time. (Ex. 4, Reyes Tr. at 11:7 – 12:7.)

103. Defendant Reyes was in charge of reviewing the various daily summaries kept by the restaurant (e.g., summaries relating to tips, daily sales, and expenses) and she was often present in the restaurant. (Ex. 2, Manlapaz Tr. at 44:20-22, 55:9-10, 22-24, 61:25-62:5, 136:2-18, 145:3-7; see Ex. 4, Reyes Tr. at 10:20-11:12, 11:20-12:16.)

104. Defendant Reyes also helped train Plaintiff upon her employment at the restaurant. (Ex. 4, Reyes Tr. at 110:11-16.)

Dated: New York, New York
December 24, 2008

Respectfully submitted,

_____
Mark Cheffo (MC 6335)
Limor Robinson (LR 6319)
Four Times Square
New York, New York 10036-6522
(212) 735-3000

David Colodny (DC 4234)
Urban Justice Center
123 William Street
16th Floor
New York, New York 10038
(646) 602-5600

*Attorneys for Plaintiff Adriane Padilla*